1-4-0-2-3-6 for the appellant, James Martinkus, and for the appellant, William Brickman, Mr. Martinkus. May I please the court? Counsel. Unlike many other oral arguments that have been made before this court, I don't think this one's going to take very long. I'm way up here. I was trying to think what I'm going to say, and the issues are relatively straightforward. There's no trial involved in this case. This is a case basically on the pleadings. The case really has to do with whether or not the allegations in Candace Dyer's complaint gives rise to a need to obtain a certificate under 2-6-2-2. The facts are pretty simple. Candace was a patient at Carle. She asked to go to the commode. An orderly came, helped her to the commode, left her in the washroom, didn't give her a call button, and then never came back. The question then becomes, are those facts, not the facts that the defendant would like to have in the case or to have been pled by the plaintiff, but the actual facts pled by the plaintiff, do those facts in any fashion involve medical expertise? There's no question, at least in my mind, that those are simple facts of common law negligence. Duty was taken on. The orderly came and took her. This isn't a case of whether or not she should have used the commode. I think in the reply brief, Carle says, well, this is about whether or not she should have been using commodes and these sorts of things. That's not the issue, at least. She went and was helped to the bathroom. She was left there. No call button was given to her. He never came back. There's nothing in any fashion that requires hospital standards. Some of the cases that I've quoted, a lot of cases in my brief, I'm not going to even try to go through them all, both in Illinois and in many other districts. I think it's illustrative of the sort of facts that many courts look at. The case of L.A. versus West Lake Hospital also talks about the fact that this sort of case can be decided upon what some of the hospital policies are bylaws in terms of what duties their orderlies would have and so forth. I want to make sure that we're speaking from the same standpoint here. Much of the case law that we cite that relates to gross negligence or issues of common dollars, those are cases where the court has indicated, well, it doesn't require an expert testimony. Those are proof issues. That's the evidentiary part of it. But here we're talking about the equitability of 2612. And isn't it at that point that we're just trying to determine is this a medical malpractice case or is this a case of common law negligence, a premises liability case? Those cases that you cite to are relevant when the parties are at the trial stage or the summer judgment stage, but they're not indicating that the cases that were presented were not medical malpractice cases. They were saying that they involved issues of proof that the average juror would be able to understand, so expert testimony perhaps wasn't necessary. I think you articulated it frankly better than I put it in my brief. I think that's right. The issue here is whether or not the allegations that we've alleged in our complaint on simple, straightforward negligence, do they rise in some fashion to a level requiring a certificate? And I don't think they do. It's a pleading question. And the reason that you look at this case and say, well, what is there, what would an expert come in and say? There's nothing here that involved a medical decision. There's nothing here that involved a hospital decision. It's not a case where a normally had to determine what the condition of the patient was and whether they should have kept the patient with the railings lifted up. None of these things apply. And that's where I'm having difficulty because I keep coming back to, don't we have to know based on her condition, her medical condition, what the appropriate step was as far as do you leave her alone? Does she have to have a call center within her reach? Is it reasonable to expect her to be able to possibly go back to the bed on her own? And all that keeps bringing me back to her medical condition and experts saying, based on her medical condition, this should have or was not necessary. Well, I understand what you're saying, and I guess my response would be this. If the question was, she got out and was helped by the orderly, and then she got injured even though she was helped, and we claimed, wow, that's negligence. Then you're right, because then I think it would have been incumbent upon us to provide some medical expertise as to her condition should the orderly have engaged in the death. But that's not the case here, because the orderly, Carl, already accepted the responsibility once its employee, the orderly, elected to come and help her. The issue isn't whether or not her condition monitored or warranted him coming and helping her. He didn't. Once she's in the commode, I mean... What is the hospital policy towards the orderly that's helped her in the commode with regard to what the orderly can and cannot do? Judge, we never got that part because we never got any discovery. I mean, that's one of the things, obviously, we would look to see. Wouldn't that be different based on the patient's, their position, their medical position? I don't believe so. I mean, if you're helping somebody, you start off with the premise that this person needed some assistance to get to the washroom. If you engage in that activity and you help the person to the washroom, it's a question of common, everyday understanding. If you do that, then you don't leave without a call button, and you don't abandon them and never come back. I don't think there's any expert testimony that's needed to answer that question. If you accept the fact that the orderly took her to the bathroom, I think the duty is for the orderly then to help her back or to provide a call button. I think this is something that a jury doesn't need expert testimony on. A jury can decide as a question of common law negligence. Was there a sufficient allegation? Was there sufficient proof? And so forth. Where's their duty? I think there clearly is a duty. How long was the patient left alone? I could not find any information. You know, Your Honor, I don't know if I can honestly tell you if I know exactly how long, but it was certainly for 15, 20 minutes, something like that. Again, because we didn't really get into the records and so forth and they had difficulty in getting the records, a lot of those questions never really got answered from my perspective either. So, I mean, I agree with you somewhat. But again, if you think about it, a 6-2 affidavit is simply to preclude people from filing frivolous lawsuits. It's not designed to frustrate or preclude a patient from bringing a claim. Fourth District has been very clear on that. I list all sorts of cases on that that talk about this. This court has said many, many times that a patient should be afforded every opportunity, that it shouldn't be technically applied. And this is the case that we have here. I firmly believe that this was not a medical negligence case. This was not a premises liability case. I didn't claim that there was some defect in the carpet or there was some defect in the bathtub or in the toilet that caused her fall. So it wasn't a premises liability case. The trial reports, I think, looking at it in that fashion is not consistent with what we plan. Simple negligence case. Orderly took her, left her, didn't give her a call on it. I mean, that's really, I think, pretty simple and I don't think you need any medical testimony for that. I would agree with you, Justice White, if in fact the issue related to should you have taken her from the beginning, did her medical condition warrant it? But none of that is before the court. But that leaves me also with did her medical condition warrant leaving her without assistance? I mean, we know that she called and asked for help and they gave her that help. But how can we determine whether it was appropriate to leave her without a call button or to leave her alone after she asked for that help without delving into her medical condition and the standard of care when taking care of someone in her medical condition? See, I don't think that, I think your question raises a good question, but that's a question left for the jury. I think the jury is far more capable of listening to this. And if, you know, the grandma here is taken to the washroom, no matter what, no matter the condition, if she needs some help, you don't leave her there. I don't see this as something that a jury would find difficult to comprehend. They may not agree with me. They may look at the policies. They may say, well, under these circumstances. But I think fundamentally, if you help someone to the bathroom and you're in the business of helping people and you leave them there to abandon them, they don't give a call button. That's what they have these call buttons for. I just see that as a simple common law. If I'm following your argument, hypothetically, if an expert testified that there really wasn't any need for her to be assisted to the commode, even though she asked for it and she got it, perhaps it was being nice, but medically it wasn't necessary, could you still win on your theory because they assisted her to the commode from the bed but then failed to return her to the bed from the commode? Judge, you ask a good question, but it subsumes that there'd be some set of medical testimony, expert testimony that could arrive at that opinion. I can't fathom what that would possibly be. Because it's a simple question. If you assist someone because they had surgery and you assist them to the bathroom and then you abandon them, that the duty, common law duty says you should do that. You owe a duty to your patient to come and help them back to the bed. It seems like we're gravitating back to the evidentiary requirements and what's necessary to prove these allegations. I thought we started out on the same page that that isn't relevant to the pleading stage. At the pleading stage, does 2622 apply such that a health professional report is required? Is it a medical malpractice case? If it is, then 2622 applies. Is that an ordinary negligence case? Then it doesn't apply. Is it a criminal liability case? Then it doesn't apply. When we shade back into areas of is expert testimony needed, is this within the realm of a leisure? Are even cases involving race, sex, or other required to 2622? So, I mean, whether or not at a later point the evidentiary burden is going to be relaxed is not particularly relevant to the pleading stage. I don't quote that proposition. You know, you said it's not a criminal liability case. I'm fully with you there. So, you're saying it's an ordinary negligence case versus a medical malpractice case. That is your position. Yes. It is, Judge. And, you know, it's not just me saying this. I mean, I don't know if I quoted 50 cases or whatever. Some, of course, are out of state. But those cases have very similar facts. There are many cases in my brief, if you look at it, almost precisely on the same facts. And the esteemed appellate court and other jurisdictions have looked at that and said, yeah, absolutely. This has nothing to do with medical negligence. It has common law negligence. So, it's not just me saying that. I do think I have support, except for it was in the brief. There are many cases that have concluded. And I think some of the cases in Illinois say that, too. And, you know, again, I don't want to go to all these cases. But if you look at the Moodle v. Grand case, they say, as long as the standard of care which a plaintiff is attempting to establish is not related to a patient's treatment or the hospital's medical standard of care, we find that the certification requirement of Section 62622 is ineligible. And, again, you can look at the Kolomowski case. If the standard may be established on the basis of other policies, the Circulation of Medical Testimony, I recognize, Judge, that maybe I'm, again, stretching over to issues of proof, and I'm not trying to do that. But for purposes of alleging a cause of action, if you're of the view that this is a medical negligence case, then I guess the question becomes, once the court, in fact, made its ruling, I then did ask and was given leave to file a medical complaint and filed a second count. The second count asked leave to obtain a report. I had placed in my affidavit that, in fact, we were not able to get the records and that the 90 days and so forth would have run. The court has discretion with respect to granting that or not. In this case, I think it's pretty clear the trial court never utilized any discretion because it found that I had never requested an extension. Well, that's just not true. I mean, we clearly requested an extension of time and sought leave to have a certificate. It wasn't done initially because I firmly believe that this was not a medical malpractice case. I thought this was a fall in the hospital. There's an oral leave. There's nothing here that sounded to me, at least, in medical negligence. But if, in fact, if you look at this and you think, well, yeah, you probably should do so, I don't see where the prejudice would be here in terms of permitting us to file a certificate and obtaining a certificate. If you look at the rationale behind the rule anyway, it's not to knock people out of a box here trying to bring a claim. It's to not allow frivolous lawsuits to go on. Well, this isn't a frivolous lawsuit. I mean, it's based upon a fall. Someone in the hospital fell. It's not where we're saying, well, this particular doctor breached the standard of care. We don't have any 6-2-2 affidavit to support that standard. So that's my view on the case. Right or wrong, whether you agree with me or not, I honestly believe that this was a case based upon all the other cases I've looked at and looked at prior to finding this case. I didn't think this was a medical malpractice case. Did you get the records? Did you get the medical records? Judge, we eventually did, but well after the fact. Okay, well after filing the amended report? Yes. Yes. So, any other questions or comments? Okay. I see none, but you are welcome to go. Thank you, Judge. Thank you. This is a great one. Thank you, Your Honor. Thank you. May it please the Court. Counsel, I'm William Brinkman on behalf of Carl Foundation Hospital. I'd like to begin by addressing some of the last things that were discussed here, and the first would be with respect to getting the medical records. The complaint was filed on July 12th of 2012. A week later was the first time that the records were requested from Carl. Carl promptly responded four days later after that request, indicating that the form used was not HIPAA compliant. It wasn't a completely filled out form, giving the form back with a blank form to use and saying, please resubmit this, completing all of the sections of this form, and we'll be happy to give you the medical records. Carl never heard back from the plaintiff again after that. But the suit had been filed. The plaintiff had the opportunity to conduct discovery within the time that So the request for the records was made about four days after the complaint was filed? Seven days. Seven days? Yes. Well, who made the request? A paralegal in Mr. Martinkus' office. Wow. Is it pretty apparent then if it came to his office, that's where the hospital would send the records? If the patient signs off on sending the records to an attorney's office, yes. But the patient had not signed off on that. That's what was incomplete with regard to the form. If anybody was... I didn't say that. So the patient had not signed off on the records being sent to Mr. Martinkus' office? Right. The only thing Carl had was something on his firm's letterhead from a paralegal saying, here's where we want you to send us the records. But Carl cannot send the records based on an attorney's letterhead letter. They have to have the patient sign off on that. Did you notify him of that problem? Carl did. Carl did, yes. I was unaware that he didn't have the records. There was never a discovery request made by the plaintiff throughout the 18 months that this case was pending. No request to produce records was made to me as the defense attorney. I had entered my appearance within a month of the complaint being filed. The way that the records were sent to Mr. Martinkus by myself was when he filed the amended complaint and he had this affidavit stating the records hadn't been produced to him. That was when I first learned that he didn't have the records. And I produced the records to him afterwards with an inquiry, now are you going to give us a certificate of merit? And when I got no response to that on two separate letters, I then filed a motion to dismiss the first amended complaint. I'm kind of curious about this period of limbo from the time that the complaint is filed asserting the 60-day apportionment to 6.2 that the records hadn't been provided and requesting the extension of time for 6.2. There is this back and forth. The request for records that was made by the plaintiff or the plaintiff's counsel, Carl said you can't give me the records until there's a HIPAA-compliant medical authorization signed. That's not the sequence of events, Your Honor. The original complaint did not have a... I'm sorry. Yes. It starts out with the medical records request, the response by Carl saying he needed a HIPAA-compliant authorization, and then somewhere down the road we've got the amended complaint saying we're revoking that portion of 2.6.2 saying that we weren't able to get medical records until the plaintiff provides this HIPAA-compliant medical authorization or there will be no records produced because of HIPAA, right? By Carl, yes. He could have served a real test. If he did that, then just result in stalemate in terms of 6.2. The 6.2, what's the end point there? I'm not sure I understand the question, but the request for extension of time was, I think, made under 2.6.19. No, no, 2.6.2 invokes the 60-day period. Under the statute of limitations. No, that the medical records haven't been provided and requesting that extension of time. But until they get the medical records, though, there's no artificial running of the 90 days in which to file the health professional report, right? I think the answer is that you're right, but I was not aware that he didn't have the medical records. What I'm wondering here is, and this may be an academic exercise, I didn't find anything case law in this report. It sounds like until those records are produced, you're in a stalemate situation in terms of 2.6.22. No report is necessary because the medical records haven't been received. The request was made so plaintiff's attorneys complied with the statute. Except that we moved to dismiss the original complaint because it didn't attach the 2.6.22 report, and this issue was not raised at that time. In other words, he argued, as he's arguing here, that it's not a medical malpractice case. He doesn't have to file the report. He did not bring to the court's attention or my attention that he didn't have the medical records and therefore could not get an expert to give him a report to attach to the certificate. And so I first learned after the court gave him leave to amend that he didn't have the records that he would need to have someone review it at the time he filed the first amended complaint. So that's why I provided him the records. And then I said to him, how about it? Are you going to produce a certificate of merit now? And the court, in responding to our motion to dismiss the first amended complaint, it noted that count two, being under 2.6.22, not having the certificate of merit and 90 days having already passed, was to be dismissed. And the court really focused on count one of the complaint, which is what the plaintiff claims is a common law negligence, not a medical malpractice claim. And the court noted that count one is not a premises liability allegation, as Mr. Martinkus has conceded here. And then the court held that the alleged breach by defendant derives from plaintiff's medical condition and the defendant's ability to care for and provide service to plaintiff because of that medical condition. And the court relied on this Kolanowski case, and I think that's the appropriate law that helps us here. The Kolanowski case was a case where there was a paralyzed patient who fell out of bed when they didn't raise the bedrest. And the case was dismissed because of failure to file a 2-622 report. The court held that the duty of care and the level of supervision depends on the patient's condition. This is a medical question that requires expert testimony. You need a report under 2-622, and the same applies here. Mr. Martinkus has said that an orderly helped her. That's not in the records, and I don't know whether or not that's true. He said that he didn't discover what the hospital policies were. Well, there was never a request for discovery of the hospital policies. We've talked about the difficulty in getting the records, and there is nothing in the record that indicates that she was left alone for 15 or 20 minutes. How long was the record? We don't know. Don't we need to know that to know whether this is a malpractice case or whether there was a case? No, I don't think you do. The level of care, whether she's left alone for one minute or left alone for one hour, depends on her condition. And her condition is a medical condition, and under the Kolonowski case, it's something that doesn't... I thought Kolonowski said that a plaintiff can proceed under a theory of ordinary negligence. It's a standard that can be established on the basis of defendant's administrative policies. I don't know what defendant's administrative policies are. So why doesn't that case allow him to proceed, at least at this juncture, not subject to a motion to dismiss, to determine whether the policies were violated? Because in that case, according to what it said, it's not a medical expert testimony case. There's no allegation that any hospital policy was violated. There was no discovery request to discover the hospital policies made in this case. So that was not before the court. As counsel has stated, that 2-622 is designed to prevent the filing of verbal dismissal lawsuits. Well, with all these unknown facts, I've been having a hard time saying that this is or is not a verbal lawsuit. So help me here, how can this court make a decision with all the unknowns in this case? I think that this court has to go on the basis of what's pleaded in the amended complaint, which is the dismissal order that's being appealed here. And in the amended complaint, it's alleged that the plaintiff was a hidden patient in the hospital. It was two days after she had knee surgery, and she was confined to bed. The trial court held that that implicates the medical care that was provided in the hospital by the trained professionals. We're not talking about the duty of care by a janitor or a receptionist or somebody walking by, something that a common layperson would be able to pass judgment on. This is something that involves care and levels of care by trained professionals. So there's no validity in counsel's argument that she was assisted from the bed to come over, and therefore a person of ordinary intelligence, a layperson, a jury, might conclude that she needed to have assistance to get back from the bed. Hospitals don't provide care that is not medically necessary. That's not what they're in the business to do. So the implication from the allegations in the complaint is that this was medical care that she needed because of her medical conditions. So that, under the Klonowski case, is a matter of medical judgment that requires expert testimony, that requires a certificate of merit under 2612. I'm trying to get this straight in my mind. It seems to me you're just suggesting that by helping her from the bed to come over, it's an acknowledgment that that was medically required. I think that's the implication. Well, if it was medically required to get from A to B, why wouldn't it be medically required to get back from B to A? Why do you insist? It may well be, but that's a matter of expert testimony. It's a matter that requires a 2-622 certificate of merit. The only issue here is not whether this was negligent in leaving her there for whatever length of time they left her there. It's not an issue of whether it was negligent that she had to get up and try to get back in bed herself. The question is, is this or is this not a healing arts malpractice case? And that's why I'm suggesting that the implication from the pleadings is that it was a medical service that was being provided to her, and that's what she was doing in the hospital. And I would also point out, Your Honor, that the plaintiff never offered to provide a 2-622 certificate of merit. The plaintiff never asked for leave to amend the dismissal after the dismissal of the First Amendment complaint. What the plaintiff asked for in a motion to reconsider was that the court reverse itself and reinstate the case as it was under the First Amendment complaint. And so even though the plaintiff had opportunities, had had the medical records for eight or nine months before the dismissal order of the First Amendment complaint, the plaintiff never made an effort to get a 2-622 report from a reviewing health care professional and never offered to. And so I think the bottom line from the pleadings in this case is that this is a case that involves a medical condition of someone in a hospital, and it's an allegation of negligence in providing care for this patient's medical condition. It clearly, in my mind, falls under Section 2-622. Okay, assuming that we agree with you, why did the dismissal with prejudice provide the opportunity to make sure that the plaintiff doesn't have to have a valid cause of action to be succeeded for? Why does it have to be prejudice? It doesn't have to be with prejudice. That's a matter of discretion. Because the plaintiff has now had two bites of the apple. The plaintiff was well aware of the basis for the court's dismissal of the original complaint and the basis of the court's dismissal of the amended complaint being the failure to comply with Section 2-622. The plaintiff is not asking for leave to amend. The plaintiff is not offering to file a 2-622 certificate of merit. Instead, the plaintiff is asking the court to let them proceed on the First Amendment complaint. Thank you. Thank you, counsel. Any other comments? Yes, sir. Thank you, Your Honor. First, if you follow Mr. Brinkman's argument, I don't think there would be any possible way ordinary negligence would ever come into play in a hospital setting. And I don't think that's the law in the state of Illinois. Everything's a hospital, medical-related situation. I don't think it's the law. There are certain things that are not. If an employee mops the floor and someone falls, that's not a medical situation. And I believe in our case, too, this is not a medically-induced situation. But I won't spend all my time on that. Here you have a situation where if you think this is one that a certificate is required, we are asking the court to reverse the trial post decision and give us an opportunity to do this. When this was filed, we didn't have the medical records, period. I can't honestly tell you I can remember all the details. We struggled getting the medical records. Counsel seems to remember it more than I do, maybe, in terms of exactly what happened. But we didn't get these records for quite some time. Well, this is what I'm trying to get to the bottom of. Mr. Brankman was, I think, looking, was thinking of 2622A2, which is the 90-day provision, the savings provision that the statute was outlawed. But you requested the initial design through the 2622A3. 2622A3 says that if you've made a request for records and they haven't been responded to in 60 days, you have an extension of time in which to file that health professional to the court starting 90 days, that extension of 90 days from the date you received the records. Here, there's no indication of when the records were received. That's true. And I don't want to mistake it. How are we to know if you're still within the 90 days of the time of the dismissal? You're right. But I wasn't given any opportunity, actually, to even present something like that to the court because the court, in its ruling, said there was no request for an extension. But we clearly did. I mean, the language that the court used in its opinion is inconsistent with what we asked for in our complaint. So I think, as a matter of law, the court was mistaken or misunderstood what we were requesting. So none of those sort of factors really got sorted out. I don't disagree with you. But even if we weren't within those days, the case law, which I've said before in my brief, still gives a court discretion to permit someone to file a late 622 affidavit. And I think this would be the exact case that would be appropriate. We didn't try to present a classic medical malpractice case and simply fail or ignore the rule of a 622 certificate of affidavit. I believe we made a good faith argument with respect to this case not being one in medical negligence. And again, I have set forth in the brief multiple, multiple cases in our state and throughout other states that specifically treat the case I allege as a simple, ordinary negligence case. So I think the court should have noted that as well and looked at the overall purpose of the statute requiring the affidavit. And it would not do any injustice at all to call anyone else to permit us to get this affidavit if you believe that it's required. I hope you don't believe that. Thank you. Thank you, Mr. Bowman. Do you have a case that's amended in the court's case recently?